UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:20 CR 540 MTS |
| | ) | |
| BRANDON VANDOREN, | ) | |
| | ) | |
| Defendant. | ) | |

## GUILTY PLEA AGREEMENT

The parties hereby agree, as follows:

## 1. PARTIES:

The parties are Defendant Brandon Vandoren, represented by defense counsel Brent Labovitz, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri.  The Court is neither a party to nor bound by this agreement.

## 2. GUILTY PLEA:

**A.**    **The Plea:** Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for Defendant's voluntary plea of guilty to Count One of the Indictment, the

1

United States agrees to dismiss Count Two (the remaining charge against this Defendant) and that no further federal prosecution will be brought in this District relative to Defendant's violations of federal law, known to the United States at this time, arising out of the events set forth in the Indictment.

**B.** **The Sentence**: The parties agree that the recommendations contained herein fairly and accurately set forth some guidelines that may be applicable to this case. The parties further agree that Defendant may request a sentence below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines, Title 18, United States Code, Section 3553, or any other provision or rule of law not addressed herein. The United States will not request a sentence above 210 months. The parties understand that the Court is neither a party to nor bound by the Guidelines recommendations agreed to in this document.

**3. ELEMENTS:**

Defendant admits to knowingly violating Title 18, United States Code, Section 2119, as punishable under Section 2119(2), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

    **(i)**    Defendant took a motor vehicle from the presence of another;

    **(ii)**   Defendant did so by means of force and violence or intimidation;

    **(iii)**  That the motor vehicle had been transported in interstate commerce;

2

**(iv)** That at or during the time Defendant took the motor vehicle he intended to cause death or serious bodily injury; and,

**(v)** That the Defendant caused serious bodily injury to a person while taking the motor vehicle.

## 4. FACTS:

The parties agree that the facts in this case are as follows and that the Government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

### May 20, 2020, Carjacking

On the evening of May 20, 2020, J.B. arrived at a MotoMart gas station/convenience store in Jefferson County, Missouri, which is within the Eastern District of Missouri, in his uncle's black Saturn Aura, *i.e.*, a motor vehicle that had been transported in interstate commerce. J.B. went into the convenience store and purchased, among other items, two Coke sodas, leaving the Aura on the MotoMart lot.

Shortly thereafter, Defendant Brandon Vandoren and Matthew Carver arrived at the same MotoMart in a stolen Dodge Dart. Defendant Vandoren and Carver intended to take a vehicle from the MotoMart lot. As such, Carver drove the Dart up to the Saturn Aura. Defendant Vandoren then got out of the Dart and entered the Aura. Carver began to drive away in the Dart; while Defendant Vandoren began driving away in the Aura. But, J.B. exited

3

the convenience store and ran to the Aura. J.B. then threw a Coke soda at the Aura. Vandoren then hit J.B. with the Aura and fled.

Defendant used force to take the Aura from the presence of J.B., and at the same time, intended to cause death or serious bodily injury while doing so. Defendant did in fact cause serious bodily injury to J.B., who was nonresponsive and in critical condition. In fact, J.B. nearly died as a result of the carjacking and experienced permanent and/or life-threatening injuries (including brain injuries).

Following the carjacking, both Defendant Vandoren and Carver fled, leading officers on a high-speed chase, creating a substantial risk of death or serious bodily injury to others. When Carver ultimately crashed the stolen Dart and fled, Defendant Vandoren attempted to pick him up in the Aura, but ultimately drove off as officers approached. While Carver was eventually apprehended, Defendant Vandoren escaped that evening.

### May 21, 2020, Apprehension of Defendant

The next day, however, law enforcement officers located the Aura at an America's Best Value Inn in St. Louis County, which is within the Eastern District of Missouri. The Aura was damaged, consistent with Defendant hitting J.B. Specifically, a headlight was damaged, matching up with headlight debris found at the scene of impact. The Aura's windshield was also damaged, and J.B.'s skin was found on the windshield.

Law enforcement had previously determined that Defendant Vandoren was a subject of the investigation from, among other things, Carver's Facebook and MotoMart surveillance

4

video. America's Best Value Inn employees then informed officers that Scott Vandoren (Defendant's father) had rented a room at the hotel. Officers went to that room and knocked on the door. Defendant Vandoren answered the door and was detained. Officers could see a firearm in plain view in the hotel room, between the box spring and mattress of one of the beds. Notably, Defendant Vandoren is a convicted felon.

Subsequently, officers obtained consent to search the hotel room from Defendant and H.G. (who was with Defendant). Officers then recovered and seized from the hotel room, among other items, a 9mm Taurus handgun with five rounds in the magazine, syringes, and capsules of suspected controlled substances. H.G. and Defendant gave statements to the officers. H.G. informed officers Defendant had picked her up around midnight in the Aura and that the Aura was damaged at that time. H.G. said that Defendant had not wanted to talk about the damage to the vehicle. Meanwhile, Defendant admitted to law enforcement that he had taken the Saturn Aura from J.B. Defendant specifically admitted to seeing J.B. as he was taking the Aura; in fact, Defendant maintained that J.B. threw a brick at the Aura. (While there was no brick at the crash scene, there were Coke cans located at the scene).

Investigators also viewed several Facebook Live videos from Carver's account which were recorded live on May 20, 2020 (the last video appears to have been recorded approximately 45 minutes before the carjacking). If called to testify at sentencing, the investigators would testify that the videos depict Vandoren and Carver each brandishing the 9mm Taurus handgun described above.

5

## 5. **STATUTORY PENALTIES:**

Defendant fully understands that the maximum possible penalty provided by law for the crime to which Defendant is pleading guilty is imprisonment of not more than 25 years, a fine of not more than $250,000, or both such imprisonment and fine. The Court shall also impose a period of supervised release of not more than 5 years.

## 6. **U.S. SENTENCING GUIDELINES: 2021 MANUAL:**

Defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply.

### A. **Chapter 2 Offense Conduct:**

(i) **Base Offense Level:** The parties agree that the base offense level is 20, as found in Section 2B3.1(a).

(ii) **Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply: 4 levels should be added pursuant to Section 2B3.1(2)(d) because a dangerous weapon (the Aura) was used; 6 levels should be added pursuant to Section 2B3.1(3)(c) because a victim experienced permanent and/or life-threatening bodily injuries; and 2 levels should be added pursuant to Section 2B3.1(b)(5), because the offense involved a carjacking.

### B. **Chapter 3 Adjustments**

6

(i)     **Section 3C1.2 Adjustment:** The parties agree that two levels should be added pursuant to Section 3C1.2 because Defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer.

(ii)     **Acceptance of Responsibility:** The parties agree that three levels should be deducted pursuant to Section 3E1.1(a) because Defendant has clearly demonstrated acceptance of responsibility. The parties agree that Defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by Defendant which it believes are inconsistent with Defendant's eligibility for this deduction, the United States may present said evidence to the court, and argue that Defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

C.     **Estimated Total Offense Level:** The parties estimate that the Total Offense Level is 31 unless Defendant is a Career Offender. Depending on the underlying offense and Defendant's criminal history, Defendant could be a Career Offender pursuant to Section 4B1.1. If the Court finds Defendant is a Career Offender, the Total Offense Level may be higher and the Criminal History Category may be as high as Category VI. Defendant has discussed these possibilities with defense counsel. Both parties reserve the right to argue that Defendant is or is not a Career Offender.

D.     **Criminal History:** The determination of Defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the

7

finding of the Presentence Report as to Defendant's criminal history and the applicable category. Defendant's criminal history is known to Defendant and is substantially available in the Pretrial Services Report.

E. **Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement. Both parties recognize they are bound by the specific agreements made herein, but both parties reserve the right to answer any questions the U.S. Probation Office or the Court might have related to sentencing or present evidence at the Court's request.

**7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

A. **Appeal:** Defendant has been fully apprised by defense counsel of Defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

(i) **Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea.

(ii) **Sentencing Issues:** In the event the Court accepts the plea and, after determining a Sentencing Guidelines range, sentences the Defendant within or below that

8

range, then, as part of this agreement, the Defendant hereby waives all rights to appeal all sentencing issues other than Criminal History. Similarly, the United States hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea and sentences the Defendant to a sentence within or above the Sentencing Guidelines range.

**B.** **Habeas Corpus:** Defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**C.** **Right to Records:** Defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

**A.** **Disclosures Required by the United States Probation Office:** Defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

9

**B.** **Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against Defendant.

**C.** **Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon Defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on Defendant to which Defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require Defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. Defendant understands that parole has been abolished.

**D.** **Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $100, which Defendant agrees to pay at the time of sentencing. Money paid by Defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**E.** **Possibility of Detention:** Defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

10

**F.** **Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, costs of incarceration and costs of supervision. Defendant agrees that any fine imposed by the Court will be due and payable immediately. In addition, the Court may impose restitution (in addition to any penalty authorized by law) which will also be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. Defendant agrees to provide full restitution to all victims of all charges in the Second Superseding Indictment returned by the grand jury on September 9, 2019 (Dkt. #43).

*CW 11/8/23*
*BEL 11/8/23*

**G.** **Forfeiture:** Defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. Defendant agrees that said items may be disposed of by law enforcement officials in any manner.

**9. ACKNOWLEDGMENT AND WAIVER OF DEFENDANT'S RIGHTS:**

In pleading guilty, Defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right

11

to require the government to prove the elements of the offenses charged against Defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. Defendant further understands that by this guilty plea, Defendant expressly waives all the rights set forth in this paragraph.

Defendant fully understands that Defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. Defendant's counsel has explained these rights and the consequences of the waiver of these rights. Defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

Defendant is fully satisfied with the representation received from defense counsel. Defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which Defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is

12

presumed mandatory. Defense counsel has advised Defendant of the possible immigration consequences, including deportation, resulting from the plea.

## 10. **VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:**

This document constitutes the entire agreement between Defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, Defendant states that no person has, directly or indirectly, threatened or coerced Defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

Defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. Defendant further acknowledges that this guilty plea is made of Defendant's own free will and that Defendant is, in fact, guilty.

## 11. **CONSEQUENCES OF POST-PLEA MISCONDUCT:**

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of

13

justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, Defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

11/8/23
Date

_____
CASSANDRA J. WIEMKEN, #91586KY
Assistant United States Attorney

11/8/23
Date

_____
BRANDON VANDOREN
Defendant

11/8/23
Date

_____
BRENT LABOVITZ
Attorney for Defendant

14